# In the United States Court of Federal Claims

Case No. 09-651C
FOR PUBLICATION
Filed: September 23, 2010

* * * * * * * * * * * * * * * * * * * * * * * ***

|  |  |
|---|---|
| FLOORPRO, INC., | |
| Plaintiff, | Motion to Dismiss; Statute of Limitations; 25 U.S.C. § 2501; Purpose of Statutes of Limitations; Theory of Repose |
| v. | |
| THE UNITED STATES, | |
| Defendant. | |

* * * * * * * * * * * * * * * * * * * * * * *

*James S. DelSordo*, Argus Legal, Manassass, Virginia, for Plaintiff.

*Domenique Kirchner*, Commercial Litigation Branch, Civil Division, Department of Justice, Washington, D.C., with whom were *Tony West*, Assistant Attorney General, *Jeanne E. Davidson*, Director, and *Bryant G. Snee*, Deputy Director, for Defendant. *Pamela Nestell*, Of Counsel, Senior Trial Attorney, Naval Facilities Engineering Command, for Defendant.

## OPINION and ORDER

**SMITH,** Senior Judge:

Before the Court are Defendant's Motion to Dismiss, or in the alternative, Motion for Summary Judgment and Plaintiff's Response and Cross-Motion for Summary Judgment, as well as each parties' reply briefs. Defendant asserts that the Plaintiff cannot establish that the Government's alleged breach of contract occurred within six years of the date that the Complaint was filed. Plaintiff argues that its Complaint was timely filed and, therefore, its Complaint should not be dismissed. For the reasons set forth below, the Court hereby **DENIES** Defendant's Motion to Dismiss.

### I. FACTS

On February 11, 2002, Floorpro, Inc. (Floorpro) entered into a subcontract agreement with GM&W Construction (GM&W) under contract No. N62467-02-M-2013 (the Contract) to install flooring coating in Warehouse 1360 Bays 2 and 4 at the Marine Corps Logistics Base in Albany,

1

Georgia. (App. 20, 107-129.) FloorPro began performance of the Contract on February 14, 2002, and performance was completed by February 27, 2002. *Id.* On March 8, 2002, the Government took possession of the work and no deficiencies were noted. (App. 3, 20.) Thereafter, FloorPro submitted its invoice for payment to GM&W. This invoice was not promptly paid by GM&W. Therefore, on April 17, 2002, FloorPro informed the Contracting Officer (CO) that its invoice submitted to GM&W had not been paid. (App. 3, 21.)

Subsequently, on April 22, 2002, the CO discussed with GM&W the lack of payment to FloorPro. (App. 3, 21, 98.) At that time, GM&W informed the CO that there were claims against it, and it did not know whether funds deposited into the company account would be available to pay FloorPro. *Id.* As a result, the CO and GM&W agreed to a bilateral contract modification, Modification P00001 (Modification), directing the Government's finance office to issue a joint check payable to both GM&W and FloorPro. This payment was to satisfy FloorPro's invoice. (App. 3, 21-22.) However, instead of issuing a joint check, the Defense Finance and Accounting Service (DFAS) office paid GM&W directly by electronic means. (App. 21, 100.) FloorPro has never been paid for its work under the contract. (App. 96.)

## II. PROCEDURAL HISTORY

As FloorPro was not paid for its work as agreed to by the Modification, FloorPro submitted its claim for $42,000 to the CO on December 5, 2002. By letter dated December 17, 2002, the CO refused to issue a final decision concerning FloorPro's claim asserting that the CO could not issue a final decision because the Government did not have a contract with FloorPro. (App. 3, 22, 97.) Further, FloorPro's claim was not sponsored by GM&W, the prime contractor. (App. 3, 13.)

Approximately three months later, on March 27, 2003, FloorPro directly filed a claim against the Government at the Armed Services Board of Contract Appeals (ASBCA). Before the Board, the Government sought dismissal of FloorPro's appeal on the grounds that the Board lacked jurisdiction because FloorPro, as a subcontractor, lacked privity of contract. (App. 30.) In a decision dated March 30, 2004, the Board held that FloorPro was not in contractual privity with the Government, but that it was an intended third-party beneficiary of a contract modification made by the Government and GM&W. (App. 8-17.)

After this decision and further briefing, on October 5, 2004, the Government raised a new argument in its filings, arguing that FloorPro had no rights as a third-party beneficiary. *Id.* The Board disagreed with this argument and, in a decision dated June 27, 2007, held that the Government beached the Contract Modification and ruled in favor of FloorPro. (App. 18-28.)

Thereafter, the Government appealed to the United States Court of Appeals for the Federal Circuit. In June of 2009, the Federal Circuit vacated the Board's decision and remanded the matter for dismissal. *See Winter v. FloorPro*, 570 F.3d 1367 (Fed. Cir. 2009). In its decision, the Federal Circuit held that the Contract Disputes Act (CDA), 41 U.S.C. §§ 601-613 (2006), did not give the Board jurisdiction over FloorPro's claim because FloorPro was not a "contractor" within the meaning of the CDA. *Winter*, 570 F.3d at 1371. Shortly after the Federal Circuit's decision, on

October 2, 2009, Plaintiff filed its Complaint in this Court.

### III. DISCUSSION

It is well established that claims against the Government under the Tucker Act, 28 U.S.C. § 2501 (2006), are subject to a six-year statute of limitations. Further, section 2501 creates a jurisdictional condition precedent for suit in this Court, which may not be waived by the parties. *John R. Sand & Gravel Co. v. United States*, 457 F.3d 1345, 1354-55 (2006), *aff'd*, 552 U.S. 130 (2008). Under the Tucker Act, a claim accrues "as soon as all events have occurred that are necessary to enable the plaintiff to bring suit." *Martinez v. United States*, 333 F.3d 1295, 1303 (Fed. Cir. 2003) (en banc), *cert. denied*, 540 U.S. 1177 (2004). Here, the issue that determines jurisdiction is the time at which FloorPro's cause of action accrued. As a plaintiff, FloorPro bears the burden of demonstrating that its complaint was timely filed. *See Alder Terrace, Inc. v. United States*, 161 F.3d 1372, 1377 (Fed. Cir. 1998).

The Government relies on the rule established in *Brighton Village Assoc. v. United States*, 52 F.3d 1056 (Fed. Cir. 1995), that in a breach of contract case a claim "accrues when a plaintiff has done all he must do to establish his entitlement to payment and the defendant does not pay." *Id*. at 1060. The Federal Circuit held that breach "claims accrued on the date[] the alleged breach[] occurred." *Id.* Thus, relying on the test in *Brighton Village*, the Government argues that FloorPro's breach of contract claim accrued at the time that FloorPro was allegedly due payment and it was not paid.

According to the Government, the operative facts pertaining to the statute of limitations are as follows. The Modification was signed on April 22, 2002. On July 17, 2002, DFAS paid GM&W Construction directly instead of issuing a two-party check as the Modification required. By letter dated July 18, 2002, the Navy informed FloorPro that DFAS had ignored the Modification and "did not issue the two-party check as the modification had directed." (App. 3, 89.) On August 9, 2002 the Navy confirmed by letter to Floor Pro that "GM&W has been paid in full by the Government for the subject contract." (App. 95.) This date is the date that the Government asserts is the time that it became clear that the Navy, having paid GM&W, would not make another payment to FloorPro. Hence, according to the Government, FloorPro's claim accrued on August 9, 2002, and FloorPro's Complaint should have been filed no later than August 9, 2008.

Moreover, the Government asserts that bringing the action before the ASBCA to challenge the Navy's failure to pay does not postpone the accrual of its Tucker Act claim. *See Brighton Village Assoc.*, 52 F.3d at 1060 ("Brighton's repeated administrative challenges to HUD's policies did not postpone accrual of its claims."); *Wrona v. United States*, 40 Fed. Cl. 784, 789 (1998) ("Wrona's pursuit of administrative remedies . . . did not toll the statute of limitations."). Instead, the Government asserts that FloorPro could have, and should have, filed a protective action in this Court when it filed its action in the ASBCA.

While these cases are certainly persuasive, the Government misses the mark. *Brighton Village* can certainly be distinguished from this case. In *Brighton Village*, before HUD, the

plaintiffs chose to abandon their administrative remedy and pursue their claims in this Court. In the instant case, FloorPro never abandoned its case. In fact, FloorPro continued to pursue its case diligently for 7 years, and it was not until the 7th year that Plaintiff actually lost its fight. Until that time, FloorPro had continually been rendered judgments in its favor. So when the Government claims in its brief that "FloorPro failed to pursue its alleged contract right in a diligent manner," and thus, "its action filed on October 2, 2009 is time-barred," (Def.'s Br. 13), this assertion is flat-out wrong. It is difficult for the Court to imagine anything more FloorPro could have done to advance its rights under the contract.

Conversely, FloorPro asserts that its action did not accrue until October 5, 2004, at which time the Navy filed a brief at the Board contending that FloorPro had no enforceable rights under the Modification. FloorPro asserts that "the Government's liability based on its refusal to comply with the terms of the Modification was not complete until it denied that FloorPro had independent rights under the modification" as the Navy indicated in its brief filed on October 5, 2004. (Pl.'s Mot. 8.) FloorPro further asserts that until October 5, 2004, the Government had not refused to enforce the Modification, and not until the Government's brief was filed did the Navy assert that the Modification would not be honored. *Id.* Thus, FloorPro argues that the Court should use the October 5, 2004 date as the proper date of accrual for its claim. This date would make the complaint timely.

While the facts and the law support the October 5, 2004 date, the Court need not solely base its decision on which date is proper to start the running of the statute of limitations. Instead, in this case, it is clear that the Court must turn its attention to the purpose of the statute of limitations. "[S]tatutes of limitations are designed primarily to assure fairness to defendants." *Burnett v. N.Y. Cent. R.R.*, 380 U.S. 424, 428 (1965). The limitations serve to "promote justice by preventing surprises through revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared." *Id.* "The theory is that even if one has a just claim it is unjust not to put the adversary on notice to defend within the period of limitation and that the right to be free of stale claims in time comes to prevail over the right to prosecute them." *Id.* (internal quotation marks omitted). "Moreover, the courts ought to be relieved of the burden of trying stale claims when a plaintiff has slept on his rights." *Id.* "This policy of repose, is designed to protect defendants, however, such protections can be outweighed where the interests of justice require vindication of a plaintiff's rights." *Id.*

Here, it is clear that the Plaintiff did not sleep on its rights. FloorPro began working with the Government prior to payment being made to GM&W. During that time, FloorPro secured what it thought was a Modification to the contract so that it would receive payment for its work done for the Navy, and through a company that the Navy knew was not in a position to pay FloorPro. After the Government wrongly paid GM&W directly, FloorPro continued to pursue its payment through the CO. By letter dated December 5, 2002, FloorPro requested payment from the CO and that request was denied on December 17, 2002. Thereafter, on March 27, 2003, FloorPro directly filed a claim against the Government at the ASBCA. FloorPro continued on its quest for payment and was successful at the ASBCA. In its final decision dated June 27, 2007, the Board held that the Government breached the Contract Modification and ruled in favor of FloorPro.

After that final favorable decision to FloorPro, the Government filed its appeal. Two years later, on June 26, 2009, the Federal Circuit vacated the Board's decision and remanded the matter for dismissal, effectively changing FloorPro's theory of its case. *See Winter*, 570 F.3d at 1373 (Fed. Cir. 2009) (holding that the ASBCA did not have jurisdiction over FloorPro's CDA claim and vacating the Board's decision). Finally on October 2, 2009, only three months after the Federal Circuit's decision, FloorPro filed its complaint in this Court. FloorPro has been diligently pursuing its claims for over seven years. FloorPro's actions cannot be considered sleeping on its rights. To hold otherwise would be an injustice. If the Court were to accept the Government's argument, that FloorPro's claim is precluded by the statute of limitations, this interpretation would lead to an unjust result and a result that is contrary to the purpose of this Court's Statute of Limitations.

## IV. CONCLUSION

For the reasons set forth above the Court hereby **DENIES** Defendant's Motion to Dismiss. The Court will issue a separate Order scheduling a status conference to discuss the litigation schedule and pending cross-motions for summary judgment.

**It is so ORDERED**.

 s/ Loren A. Smith
LOREN A. SMITH
Senior Judge