# In the United States Court of Federal Claims

Case No. 09-651C
FOR PUBLICATION
Filed: April 6, 2011

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

|  |  |
|---|---|
| | \* |
| **FLOORPRO, INC.,** | \* |
| | \* |
| *Plaintiff,* | \* Cross-Motions for Summary Judgment; |
| | \* RCFC 56(c); Intended Third-Party |
| | \* Beneficiary Rights; *Flexfab, L.L.C. v.* |
| v. | \* *United States*; *D & H Distribution Company* |
| | \* *v. United States*; Subcontractor Privity in |
| | \* Government Contracts |
| **THE UNITED STATES**, | \* |
| | \* |
| *Defendant.* | \* |
| | \* |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

*James S. DelSordo*, Argus Legal, Manassass, Virginia, for Plaintiff.

*Domenique G. Kirchner*, Commercial Litigation Branch, Civil Division, Department of Justice, Washington, D.C., with whom were *Tony West*, Assistant Attorney General, *Jeanne E. Davidson*, Director, and *Bryant G. Snee*, Deputy Director, for Defendant. *Pamela Nestell*, Of Counsel, Senior Trial Attorney, Naval Facilities Engineering Command, for Defendant.

———————————————

## OPINION and ORDER

———————————————

**SMITH,** Senior Judge:

Before the Court are the parties' Cross-Motions for Summary Judgment on the issue of contractual liability. In its Motion for Summary Judgment, the Government argues that FloorPro, Inc. ("FloorPro"), as a subcontractor to a Government contract, lacks privity of contract with the United States. Without such privity, the Government contends that the United States has not consented to be sued directly by FloorPro and this Court lacks jurisdiction over FloorPro's claim for breach of contract. The Government further argues that, to the extent that the Court finds FloorPro has standing to directly sue the Government, any future claims FloorPro may have against the United States were released when the prime contractor, GM&W

Construction ("GM&W"), agreed to Contract Modification P00001 ("the modification"), which contained a provision releasing any future claims.

In its Cross-Motion for Summary Judgment, FloorPro argues it became an intended third-party beneficiary pursuant to the terms of the contract modification executed by GM&W and the Government. As a result of this third-party beneficiary standing, FloorPro contends that this Court has jurisdiction over its breach of contract claim against the Government. After careful consideration, the Court agrees with FloorPro's position that the modification did indeed create an intended third-party beneficiary relationship between FloorPro and the Government. Thus, for the reasons set forth below, the Court hereby **DENIES** the Government's Motion for Summary Judgment and **GRANTS** FloorPro's Cross-Motion for Summary Judgment.

## **FACTS**[1]

On February 6, 2002, the Department of Navy awarded Purchase Order No. N62467-02-M-2013 ("Navy purchase order") to GM&W Construction to install new floor coatings in several warehouse bays located on the United States Marine Corps Logistical Base ("MCLB Albany") in Albany, Georgia. (App. 19, 53-76, 79.)[2] Under the terms of the Navy purchase order, GM&W was to be paid a fixed price of $42,000 for completing the floor coatings. (App. 2, 19, 54.)

Shortly after the purchase order was awarded, the contracting officer provided GM&W with the names and contact information of potential subcontractors who were recommended to perform the flooring work. (App. 104.) One of the subcontractors provided by the contracting officer was FloorPro. (App. 104.) As a result of the contracting officer's recommendation, GM&W entered into a subcontract agreement with FloorPro on February 11, 2002. (App. 20, 107-29.) Pursuant to the subcontractor agreement, GM&W agreed to pay FloorPro a fixed price of $37,500 to install the flooring work described by the Navy purchase order. (App. 20, 107-29.)

On February 27, 2002, FloorPro completed the work required under the subcontract agreement early and under budget. (App. 3, 20.) On March 6, 2002, FloorPro submitted an invoice to GM&W for the contract amount of $37,500. (App. 3, 20.) Approximately two months after submitting its invoice to GM&W, FloorPro notified the contracting officer that its invoice had not yet been paid and, due to GM&W's deteriorating financial situation, expressed concern that it would never receive compensation for its work. (App. 83.) On April 22, 2002, FloorPro's president, Ms. Michelle Power, wrote the contracting officer to formally request assistance from the Government to ensure payment by GM&W. (App. 21, 83, 98.) The following day, the contracting officer sent an e-mail to Mr. Alan Webb of GM&W, inquiring as

---

[1] / The facts in this case are also recited in the Court's September 23, 2010 Opinion denying the Government's Motion to Dismiss. *FloorPro, Inc. v. United States*, 94 Fed. Cl. 775, 776-77 (2010). The facts contained herein, which are undisputed, are simply a summary of those facts deemed pertinent to the Court's resolution of the parties' Cross-Motions for Summary Judgment. (Pl.'s Resp. to Findings of Uncontroverted Fact at 1.)

[2] / The Court shall cite to Defendant's Appendices attached to its Motion for Summary Judgment as "App. __." Defendant's Appendices contain uncontested documents, such as the Navy purchase order, the contract modification and various email correspondences.

to why GM&W had failed to pay FloorPro. (App. 85.) In the ensuing e-mail exchange, the contracting officer noted, "I feel obligated to see [FloorPro] get paid because I asked them to sub-contract with [GM&W]." (App. 85.) In response, Mr. Webb was understanding of the contracting officer's concern in seeing that FloorPro was paid for its work and replied, "If you want to do a two party check, that (*sic*) ok with me." (App. 86.)

On April 22, 2002, GM&W and the Government executed Contract Modification P00001 in hope of facilitating payment to FloorPro. (App. 77-78.) The modification substituted the method of payment for the Navy purchase order, requiring the Defense Finance Accounting Service ("DFAS") to issue a two-party check jointly to GM&W and FloorPro. (App. 77-78.) Prior to the modification, the Navy purchase order obligated the Government to electronically deposit the payment directly in GM&W's account. (App. 3, 77-78, 98.) In addition to the joint-payment condition, the modification also contained a "Contractor Statement of Release," which stated the modification constituted "payment in full" in satisfaction of the Navy purchase order and any future claim by the contractor was thereby "released." (App. 78.)

Unfortunately, DFAS failed to honor the terms of the modification and, instead, electronically deposited the sum of $42,000 directly into GM&W's account on July 17, 2002. (App. 105.) On July 23, 2010, a FloorPro representative sent a letter to the contracting officer, inquiring, "[w]hat exactly is being done by MCLB Albany to process a payment to us for our work?" (App. 91-92.) In response, the contracting officer sent a letter to FloorPro on August 9, 2002, stating:

> While we understand your frustration in not being paid for completed work, unfortunately, our ability to facilitate such payment is exceedingly limited. . . . As the Government does not possess privity of contract with FloorPro, Inc., or any other subcontractor . . . [a]ny recourse on your behalf must be obtained from GM&W through the civil court system.

(App. 95.)

As a result of the Government's failure to adhere to the contract modification, FloorPro has yet to be paid for its work on the contract. (App. 96.) On October 2, 2009, FloorPro filed suit in this Court to recover damages, pursuant to the terms of the modification, for the work performed under the Navy purchase order.

## DISCUSSION

### FloorPro as a Third-Party Beneficiary

#### A.  Standard for Subcontractor Third-Party Beneficiary Standing

It is a long-standing principle that the United States, as a sovereign, only consents to be sued by those parties "with whom it has privity of contract." *See United States v. Lee*, 106 U.S. 196, 207, 27 L. Ed. 171, 1 S. Ct. 240 (1882); *Flexfab, L.L.C. v. United States*, 424 F.3d 1254, 1263 (Fed. Cir. 2005) (citing *Erickson Air Crane Co. of Wash., Inc. v. United States*, 731 F.2d

810, 813 (Fed. Cir. 1984)); *see also Cienega Gardens v. United States*, 194 F.3d 1231, 1239 (Fed. Cir. 1998) ("The effect of finding privity of contract between a party and the United States is to find a waiver of sovereign immunity."). More precisely stated, in order for a plaintiff to have standing to sue the United States on a contract claim, it must be in direct privity of contract with the Government. *See Anderson v. United States*, 344 F.3d 1343, 1351 (Fed. Cir. 2003).

As a general rule of government contract law, prime contractors alone enjoy privity of contract with the Government, while "subcontractors do not have standing to sue the government . . . in the event of an alleged government breach." *See Erickson*, 731 F.2d at 813 (citing *United States v. Johnson Controls*, 713 F.2d 1541, 1550-51 (Fed. Cir. 1983)) (internal citations omitted). In *Merritt v. United States*, 267 U.S. 338, L. Ed. 643, 45 S. Ct. 278 (1925), the Supreme Court discussed the effect privity has on a subcontractor's right to sue the Government. In affirming the United States Court of Claims' dismissal of a subcontractor's breach of contract claim, the Supreme Court reasoned, "Plaintiff cannot recover . . . [because] [t]he petition does not allege any contract, express or implied in fact, by the Government with the plaintiff. . . . Nor does it set forth facts from which such contract will be implied." *Id.* at 340-41. Thus, if a court determines that there is no express or implied contract between the Government and a subcontractor, then the apparent lack of privity precludes the subcontractor from "recover[ing] directly from the United States for amounts owed to it . . . ." *See Putnam Mills Corp. v. United States*, 479 F.2d 1334, 1337 (Ct. Cl. 1973). [3]

Despite the Supreme Court's holding in *Merritt*, the general rule that subcontractors lack privity to directly sue the Government on a contract claim is not without exception. In *Maneely v. United States*, 68 Ct. Cl. 623 (1929), the United States Court of Claims held that this Court may assert jurisdiction over claims brought by plaintiffs who are not named parties to, but rather are intended third-party beneficiaries of, government contracts. *See id.* at 629 (citing *Hendrick v. Lindsay*, 93 U.S. 143, 149, 23 L. Ed. 855 (1876)); *see also Hebah v. United States*, 192 Ct. Cl. 785, 792 (1970) ("It is settled . . . that an intended third party beneficiary of a government contract may sue under [the Tucker Act]."). This gave birth to the concept that a subcontractor may pursue a breach of contract claim directly against the Government if it can demonstrate that it was a third-party beneficiary to the contract.

In *Montana v. United States*, 124 F.3d 1269 (Fed. Cir. 1997), the Court of Appeals for the Federal Circuit ("Federal Circuit") adopted a two-prong test to be applied in deciding whether a party qualifies as a third-party beneficiary to a government contract. *Id.* at 1273 (refining the test found in *Baudier Marine Elec. v. United States*, 6 Cl. Ct. 246, 249 (1984)). More recently, however, the Federal Circuit has further clarified the language of its third-party beneficiary test, insofar as it applies to subcontractors seeking to enforce a contractual right directly against the Government, holding:

---

[3] / The Court notes that the concept of privity is similarly rooted in both the Contract Disputes Act, 41 U.S.C. § 602 ("This chapter applied to any express or implied contract . . . entered into by an executive agency . . . ."), and the Tucker Act, 28 U.S.C. § 1491 ("The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded . . . upon any express or implied contract with the Government . . . .").

> [F]or third-party beneficiary status to lie, the contracting officer must be put on notice, by either the contract language or the attendant circumstances, of the relationship between the prime contractor and the third-party subcontractor so that an intent to benefit the third party is fairly attributable to the contracting officer.

*Flexfab, L.L.C.*, 424 F.3d at 1263.

In the case before the Court, FloorPro argues that, as a result of the contract modification, it became an intended third-party beneficiary to the Navy purchase order. Acknowledging the fact that third-party beneficiary law "has been plagued by uncertainties, doctrinal and conceptual difficulties, and confusion," this Court recognizes this type of subcontractor standing is only afforded in exceptional circumstances. *See Albes v. Untied States*, 2 Cl. Ct. 494, 499 (1983), *aff'd*, 732 F.2d 166 (Fed. Cir. 1984). Thus, in order to grant the relief sought by FloorPro, the Court must be able to answer the following two questions in the affirmative: (1) Did the contracting officer intend to benefit FloorPro through the modification? and (2) Did the modification result in a direct benefit to FloorPro? *See Flexfab, L.L.C.*, 424 F.3d at 1263.

### B. FloorPro Became a Third-Party Beneficiary Pursuant to the Contract Modification P00001 Agreement

#### 1. The Contracting Officer Intended to Benefit FloorPro when Agreeing to the Modification

In *German Alliance Ins. Co. v. Home Water Supply Co.*, 226 U.S. 220, 56 L. Ed. 195, 33 S. Ct. 32 (1912), the Supreme Court noted, "[b]efore a stranger can avail himself of the exceptional privilege of suing for a breach of an agreement to which he is not a party, he must, at least show that it was intended for his direct benefit." *Id.* at 230. Following the reasoning set forth in *German Alliance*, the Federal Circuit has further stated, "[i]n order to prove third-party beneficiary status, a party must demonstrate that the contract not only reflects the express or implied intention to benefit the party, but that it reflects an intention to benefit the party directly." *Flexfab, L.L.C.*, 424 F.3d at 1259 (citing *Glass v. United States*, 258 F.3d 1349, 1354 (Fed. Cir. 2001)). In determining the element of intent, the Court's analysis must focus on the conduct and intent of the contracting officer. The Federal Circuit has further held that one way to establish intent is to "ask whether the beneficiary would be reasonable in relying on the promise as manifesting an intention to confer a right on him." *See id.* (citing RESTATEMENT (SECOND) OF CONTRACTS § 302(1)(b) cmt. d. (1981)).

After canvassing the record, it is clear to the Court that the contracting officer, and indeed GM&W, intended to benefit FloorPro when negotiating the terms of the contract modification. The Court notes two particularly compelling points in which the contracting officer clearly demonstrates the requisite intent to benefit FloorPro. First, in an e-mail exchange between the contracting officer and a representative of GM&W, the contracting officer stated "I feel obligated to see they get paid because I asked them to sub-contract with you. Tell me how this can happen???" (App. 85.) This sense of obligation, in turn, led to further e-mail exchanges between GM&W and the contracting officer in which the modification was discussed, and negotiated, as a means to directly facilitate payment to FloorPro.

Second, the contracting officer commented several times, via letter and e-mail, that the two-party check would be utilized as a means to ensure that FloorPro was paid for its work.  For example, in a sworn declaration, the contracting officer stated, "I thought [the two-party check] might facilitate payment of the subcontractor's invoice."  (App. 105, ¶ 21.)  Furthermore, on July 18, 2002, the contracting officer sent a letter to a FloorPro representative making the following representation:

> It is understandable that you would be frustrated with receiving assurances that a joint payment would be made and then it not occur. . . . Please be assured that *there is a continuing effort to see that the quality work performed for MCLB Albany by your company is paid for* and that errors like this do not occur in the future.

(App. 90) (emphasis added).

After examining the record, it is clear to the Court that the modification was entered into with the sole intention of benefiting FloorPro, specifically by providing an assurance that it would be paid for the work it performed.  Moreover, the Court notes that the Government has not provided any evidence to support the stance that the contracting officer lacked the requisite intent to benefit FloorPro by agreeing to the contract modification.[4]

### 2.  FloorPro Reasonably Relied on the Modification to Confer a Direct Contractual Benefit

Next, the Court turns its attention to whether FloorPro reasonably relied upon the modification as conferring a direct contractual benefit to FloorPro.   In relevant part, the modification states:

> This modification is issued for DFAS Kansas City to cut a two part check (Hard Copy) to the contractors listed below:
>
> G M & W Contracting and Floorpro, Inc.
>
> Remit Check To:  Floorpro, Inc.
>                  P.O. Box 11999
>                  Louisville, Ky 40251
>
> The contract price remains unchanged.

(App. 78.)   The "two part check," as described in the modification, substituted the contract clause describing the method of payment to GM&W for performance of the Navy purchase

---

[4] / According to the contracting officer's sworn declaration, the contracting officer states, "The parties did not issue Modification P00001 with the intent of making FloorPro a third-party beneficiary of the contract."  (App. 105, ¶ 23.)  It is clear to the Court that this statement is a legal conclusion made for the purposes of this litigation and directly contradicts the conduct and statements referenced herein.

order, FAR 52.232-33.   As a standard contract provision, FAR 52.232-33, "Payment by Electronic Funds Transfer – Central Contractor Registration," states, "All payments by the Government under this contract shall be made by electronic funds transfer (EFT). . . ."  *See* FAR 52.232-33 (May 1999).  However, under the terms of the modification, DFAS was instructed to "cut a two part check," which would require representatives of both GM&W and FloorPro to indorse the check prior to being deposited.  The Court, therefore, must determine whether FloorPro's right to indorsement of the two-party check prior to deposit conferred a direct contractual benefit upon which FloorPro reasonably relied.

In analyzing the issue of direct contractual benefit, the Court finds guidance in *D & H Distributing Co. v. United States*, 102 F.3d 542 (Fed. Cir. 1996), which involves nearly identical facts to the current case.   In *D & H*, a subcontractor successfully brought suit against the Government on the theory of third-party beneficiary standing to enforce a "joint-payment" contract modification.  *Id.* at 544, 548.  Much like the present case, the Government in *D & H* executed a "joint-payment" modification with the prime contractor, but breached the modification when the National Security Agency directly credited the prime contractor for the services performed by the subcontractor.  *Id.* at 544.  In holding the subcontractor had standing as a third-party beneficiary to sue the Government for breach of contract, the Federal Circuit stated:

> In the case of a contract in which the promisee provides goods or services to the promisor, it has long been settled that a clause providing for the promisor to pay the proceeds of the contract to a third party is enforceable by the third party where the payment is intended to satisfy a present or future liability of the promisee to the third party.  The third party beneficiary in that situation has traditionally been referred to as a "creditor beneficiary" and has been accorded full rights to sue under the original contract.

> \*          \*          \*

> Consistent with this analysis, Court decisions involving such joint payment agreements have characterized them as making the joint payee a third party beneficiary of the contract with the right to sue the promisor for breach.

*Id*. at 546-47 (citations omitted).

Perhaps tellingly, the Court notes that the Government refrained from addressing the aforementioned holding in *D & H Distributing Co.* in its briefs.   Instead, the Government relies on a novel theory introduced during oral argument to refute the standard set forth in *D & H*.  In attempting to explain why the contract modification did not confer a direct benefit to FloorPro, the Government argued that the issuance of a two-party check would have resulted in the exact same outcome as the electronic transfer effected by the DFAS.  (Oral Arg. Tr. 13:19-14:18.) More specifically, the Government contends that, although the two-party check would have required the indorsement of FloorPro, GM&W would have ultimately obtained sole control over the check prior to being deposited in GM&W's account.  This illogical argument fails, however, as it requires the Court to blindly assume that FloorPro would indorse the check and

unconditionally relinquish control to GM&W.  Rather, the Court can imagine several different ways in which FloorPro could have leveraged the issuance of the two-party check to ensure payment of GM&W's debt.  For example, after the indorsement by both parties, the check could have been deposited directly into FloorPro's account, thereby allowing FloorPro to retain the proceeds in which it was entitled to and crediting GM&W for the remainder.  Also, an escrow account could have been used to achieve the same result.

Applying the holding of *D & H Distributing Co.* to this case, it is clear to the Court that the contract modification conferred a direct contractual benefit to FloorPro.  The primary purpose of the modification was to provide protection to FloorPro by giving it the right to control how the Government's payment for the Navy purchase order would have been distributed.  This right, according to the Federal Circuit, "presents a particularly clear instance in which the third-party beneficiary's interest, specifically protected by the contract, would be impaired if the beneficiary were not accorded the right to obtain relief against the promisor in the event of a breach."  *D & H Distributing Co.*, 102 F.3d at 547.  Thus, the Court holds that, as a result of the terms of the contract modification, FloorPro was an intended third-party beneficiary and has standing to directly sue the Government for breach of contract.

### 3.  The Government's "Condition Precedent" Argument is Without Merit

In its Opposition to Plaintiff's Cross-Motion for Summary Judgment ("Def.'s Opp."), the Government advances the argument that the Federal Circuit's holding in *Flexfab* announced a new, third requirement to its third-party beneficiary test; that a contract modification intended to benefit a third party must be a "condition precedent" to further performance.  (Def.'s Opp. at 17.) In support of its argument, the Government directs the Court to the following passage in *Flexfab*:

> Borrowing from the Court of Federal Claims's 1996 Flexfab Decision, we agree with the proposition that when a government agent with authority to contract on the government's behalf *knows of a condition precedent to a third party's performance as a sub-contractor*, such as receipt of payment directly from the government, and specifically modifies the prime contract *so as to ensure the third party's continued performance*, the agent and by implication the government itself necessarily intend to benefit the third party.  *That intent* gives rise to standing as a third-party beneficiary to enforce the prime contract.

(Def.'s Opp. at 17 (citing *Flexfab, L.L.C.,* 424 F.3d at 1263)) (emphasis in original).  According to the Government, the Federal Circuit offered this language to call into question the enforceability of a contract modification designed to ensure payment to a subcontractor after performance had been completed.  (Def.'s Opp. at 17.)

After a thorough review of the precedential case law involving third-party beneficiary standing for subcontractors, the Court finds that the Government's argument in this regard is unsupported by the law in this jurisdiction.  The Court has yet to find an instance where the "condition precedent" language has been described as an express limitation by the Federal Circuit in regards to third-party beneficiary jurisprudence.  Indeed, since the its decision in 2005,

the Federal Circuit has never cited to *Flexfab* for the proposition that a "condition precedent" to a third party's performance is required in order for a modification to be legally enforceable. Moreover, the Court notes that the "condition precedent" language contained in *Flexfab* has only been cited to twice by judges in the Court of Federal Claims.  *See Kawa v. United States*, 86 Fed. Cl. 575, 578 (2009); *Nelson Const. Co. v. United States*, 79 Fed. Cl. 81, 95 (2007).  However, it appears to the Court that, despite the language's inclusion by quotation, no judge in this Court has interpreted the "condition precedent" language as changing the Federal Circuit's third-party beneficiary test in accordance with the Government's argument.

This Court cannot change the Federal Circuit's test set forth in *Flexfab*, and other cases. In fact, the reasoning set forth by the Government's argument directly contradicts the Federal Circuit's holding in *D & H Distribution Co*., stating that a contract modification "is enforceable by the third party where the payment is intended to *satisfy a present . . . liability*."  *D & H Distribution Co.*, 102 F.3d at 546 (emphasis added).  Rather, the Court reads the "condition precedent" passage in *Flexfab* as merely a fact-specific application of the Court's two-part standard.  *See Flexfab, L.L.C.,* 424 F.3d at 1263.  Therefore, the Court rejects the Government's argument that a post-performance modification is legally unenforceable unless there is a "condition precedent" to ensure continued performance.  In fact, the Court finds that the Government's argument would turn a real benefit to the Government into a barrier for subcontractors who have completed good work for the Government.

## The Modification's Statement of Release is Without Legal Effect Given the Government's Failure to Perform

In its second argument advanced in support of its Motion for Summary Judgment, the Government points the Court's attention to the "Contractor's Statement of Release" contained in the contract modification.  The "Contractor's Statement of Release," which was incorporated into the modification agreed upon by GM&W and the Government, states:

"CONTRACTOR'S STATEMENT OF RELEASE"

Acceptance of this modification by the contractor constitutes an accord and satisfaction and represents payment in full for both time and money and for any and all costs, impact effect, and for delays and disruptions arising out of, or incidental to, the work as herein revised.

(App. 78.)

Pursuant to the "Contractor's Statement of Release," the Government cites to *J.G.B. Enterprises, Inc. v. United States*, 497 F.3d 1259, 1261 (Fed. Cir. 2007) for the proposition that "a third-party beneficiary's right to enforce a contract is subject to all of the defenses the promisor would have against the original promisee."  (Def.'s Opp. at 19.)  Therefore, the Government posits that when GM&W agreed to waive its rights under the contract, FloorPro's right were simultaneously extinguished.  (Def.'s Opp. at 20.)  Conversely, FloorPro not only challenges the enforceability of the release, but further argues that "GM&W's release to the

Government [does not] affect FloorPro's ability to enforce its third-party beneficiary rights." (P.'s Reply at 6.)

The Government's argument that any claim made by FloorPro was presumptively released by the "Statement of Release" is unavailing.  Notwithstanding the parties' arguments regarding whether FloorPro is bound by the "Contractor's Statement of Release," the Court need not look any further than the fact that the Government failed to adhere the conditions of the modification.  Although the terms of the modification required the Government to issue a two-party check jointly to GM&W and FloorPro, the modification itself was actually agreed upon, and executed, by GM&W and the Government.  FloorPro's claim in this matter rests solely on the fact that the modification conferred to it a direct contractual benefit, which was lost due to the Government's breach.

The Government is correct in asserting that, as a general principle, "a party standing outside of privity by contractual obligation stands in the shoes of the party within privity." *Hartford Corp. Pension Plan & Trust v. United States*, 194 F.3d 1279, 1289 (Fed. Cir. 1999). However, the Government's reliance on the "Contractor's Statement of Release" is factually and legally flawed.  At the precise moment the Government electronically credited GM&W's account, a breach of the modification occurred.  The Government's contention that the payment electronically sent to GM&W was in accordance with the terms of the contract is thus, incorrect. Moreover, the fact that GM&W received a windfall as a result of the Government's breach of the modification is irrelevant.  The direct contractual benefit conferred to FloorPro was not discharged by the Government's incorrect payment to GM&W.  Therefore, the Government may not use the "Statement of Release" to shield itself from contractual liability to FloorPro.

## CONCLUSION

For the reasons set forth above, the Court holds that the terms of Contract Modification P00001, executed by GM&W and the Government, designated FloorPro as an intended third-party beneficiary.  Furthermore, the Government breached the contract modification when it failed to issue a two-party check jointly to GM&W and FloorPro.  As a result of the breach, the Court holds that FloorPro has standing to bring suit directly against the Government to enforce the contractual benefits conferred upon it under the terms of the modification.

Accordingly, the Court hereby **DENIES** the Government's Motion for Summary Judgment and **GRANTS** FloorPro's Cross-Motion for Summary Judgment.  The Court shall issue a separate order scheduling a status conference to discuss how the parties intend to proceed with the calculation of damages in this matter.

**IT IS SO ORDERED.**

s/ Loren A. Smith
LOREN A. SMITH
Senior Judge